UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
GOVERNMENT EMPLOYEES INSURANCE　　:
CO., GEICO INDEMNITY CO., GEICO　　　:
GENERAL INSURANCE COMPANY, and　　 :
GEICO CASUALTY CO.,　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　Plaintiffs,　　　　　 :
　　　　　　　　　　　　　　　　　　 :
　　　　　　　-against-　　　　　　　　 :
　　　　　　　　　　　　　　　　　　 :
EDOVARD J. HAZEL, EASTCHESTER　　　 :
PRECISION MEDICAL, P.C., PRECISION　 :
OFFICE MANAGEMENT, INC., IGOR　　　 :
ERLIKH, RUSLAN ERLIKH, JOHN DOE ONE :
THROUGH JOHN DOE FIVE,　　　　　　 :
　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　Defendants.　　　　　 :
-------------------------------------------------------- x

**REPORT AND RECOMMENDATION**
11-CV-00410 (CBA) (VMS)

**Scanlon, Vera M., United States Magistrate Judge:**

　　　Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General

Insurance Company, and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs") brought

this action against Defendants Dr. Edovard J. Hazel ("Dr. Hazel"); Eastchester Precision

Medical, P.C. ("Eastchester"); Precision Office Management, Inc. ("Precision"); Igor Erlikh; and

Ruslan Erlikh (collectively "the Erlikhs"); and John Doe One through John Doe Five.[1]  Docket

No. 1.  In summary, the complaint alleges that GEICO paid Eastchester approximately

$117,000.00 as the result of a raft of fraudulent insurance claims submitted to GEICO pursuant

to a scheme devised by Defendants, and that Eastchester believes that GEICO owes an additional

$922,000.00 in pending claims arising from the same fraud scheme.  Id. ¶ 109.  GEICO alleges

that as a result of Defendants' fraud scheme, Dr. Hazel, Precision and the Erlikhs are liable to

---

[1] For the purposes of this report and recommendation, this Court will no longer refer to John Doe
One through John Doe Five, as the allegations relating to these individuals are not relevant to the
instant motion.

GEICO under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., and that all Defendants are liable to GEICO for New York State common law fraud and unjust enrichment.  Id.  GEICO seeks damages from Defendants to recover the money it already paid to Eastchester and also requests that the Court enter a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 against Eastchester stating that GEICO does not owe the approximately $922,000.00 in pending claims.  Id.

Before the Court is Ruslan Erlikh's motion to amend his answer to include counterclaims alleging that GEICO is liable for committing common law fraud against him, Docket No 106 ¶¶ 13-17; intentionally interfering with a contract,[2] id. ¶¶ 18-20; and violating the New York General Business Law, N.Y. Bus. L. § 349, id. ¶¶ 21-25 ("the Erlikh motion").  The Erlikh motion was filed in response to GEICO's earlier filed motion to dismiss the GEICO claims against the Erlikhs under Rule 41(a)(2) of the Federal Rules of Civil Procedure ("FRCP"), which the Honorable Carol B. Amon referred to me for report and recommendation.  Docket No. 93. Although that FRCP 41(a)(2) motion was fully briefed by the Parties and the subject of oral argument by the Parties, GEICO asked that its FRCP 41(a)(2) motion be held in abeyance

---

[2] Ruslan Erlikh calls this claim "intentional interference with advantageous contractual relations," which this Court understands to be tortious interference with a contract.  That may be because in New York, "[w]hen a defendant knowingly interferes with a valid existing contract, that is, one not voidable for lack of mutuality or one that is not terminable at will," a claim of tortious interference with a contract allows a plaintiff to "recover damages if he or she demonstrates that defendant, knowing of plaintiff's contract with a third party, intentionally induced a breach of the contract . . . without reasonable justification or excuse."  Kreindler, Rodriguez, Beekman & Cook, 14 N.Y. Prac., New York Law of Torts § 3:12 (citing Guard-Life Corp. v. S. Parker Hardware Mfg. Co., 50 N.Y.2d 183, 190 (1980)).  By contrast, if "there is no definite, binding, existing contract, but only the expectation of a future contract[,]" the tort is called tortious interference with a prospective contractual relation.  Id.  Here, Ruslan Erlikh alleges that GEICO interfered with Eastchester and Precision's valid existing contract.  Docket No. 106 ¶ 12 ("I am owed an enormous amount of money pursuant to the terms of the contracts between [Eastchester and Precision].").

pending the disposition of this motion, with the understanding that this Court would only consider GEICO's FRCP 41(a)(2) motion if the Erlikh motion were denied. Docket Nos. 93, 94, 101; Docket No. 102 at 46:19-47:5 ("We would ask that our motion be held in abeyance pending the disposition of any prospective motion to assert counterclaims.").

For the following reasons, I respectfully recommend that the District Judge **deny** the Erlikh motion. In the event that the District Judge adopts this recommendation, I also respectfully recommend sua sponte that the District Judge consider and **grant** GEICO's FRCP 41(a)(2) motion to dismiss. In the event that the District Judge does not adopt my recommendation vis-à-vis the Erlikh motion, I respectfully recommend that GEICO's FRCP 41(a)(2) motion be permanently withdrawn.

## I.     Factual Background

### a.  Procedural History

The following facts are taken from Plaintiffs' complaint and the Erlikh motion.

GEICO brought this action against Eastchester, Dr. Hazel, Precision and the Erlikhs, alleging that Precision and the Erlikhs (collectively the "Management Defendants"), who are not licensed physicians, unlawfully owned and controlled Eastchester, while designating Dr. Hazel as the nominal or "paper" owner. They then allegedly used Eastchester as a vehicle to submit fraudulent no-fault insurance billing to GEICO and other insurers. Docket No. 1, passim. GEICO alleges that through Defendants' fraud scheme, Dr. Hazel and the Management Defendants violated RICO, 18 U.S.C. §§ 1961 et seq., and that all Defendants committed common law fraud and were unjustly enriched. Id.

On June 17, 2011, the Management Defendants answered the Complaint, but they did not assert counterclaims against Plaintiffs or cross-claims against Dr. Hazel or Eastchester in that

pleading.  Docket No. 30.  The Court initially set the deadline for the parties to file motions to amend pleadings as May 22, 2012.  Docket Entry 3/22/2012.  The Erlikhs did not make a motion to amend their answer prior to the deadline.

On April 24, 2012, Plaintiffs settled their claims against Eastchester for $550,000.00. Docket No. 52.  By that point Dr. Hazel was no longer the physician in control of Eastchester, even nominally; instead, a Dr. Ciancimino had assumed control and shepherded Eastchester through the settlement negotiation that led to the entry of a judgment against Eastchester. Docket No. 102 at 15:11-12.  The Court permanently enjoined Eastchester or anyone purporting to act on Eastchester's behalf from submitting any new no-fault bills to Plaintiffs, or from attempting to collect from Plaintiffs on any pending bills.  Docket No. 51.

After obtaining the judgment against Eastchester, Plaintiffs continued to prosecute their claims against the Erlikhs.  For example, the Erlikhs successfully opposed Plaintiffs' request to file for default judgment against them, a response to the Erlikhs' delay in securing counsel to appear for Precision in this matter.[3]  Docket Nos. 53, 55, 56, 57, 60.  In addition, in July 2012, Plaintiffs filed motions to compel compliance with discovery requests against the Erlikhs, with some success.  Docket Nos. 61, 64; Docket Entry 8/1/2012.  Next, in September 2012, Plaintiffs unsuccessfully sought sanctions against the Erlikhs due to the Erlikhs' failure to comply with discovery requests and a related Court Order.  Docket No. 68.

On February 4, 2013, this Court held a settlement conference with GEICO and the Erlikhs.  Docket No. 87.  The Parties did not reach a settlement, but during the conference, the Erlikhs represented to GEICO that they "lacked any money with which to satisfy any judgment

---

[3] The Erlikhs have as individual Defendants alternated between being represented by counsel and litigating pro se in this action.  Ruslan Erlikh brings this motion to amend the answer pro se.

that GEICO might obtain against them in this action." Docket No. 93-2 (sworn declaration of

GEICO's counsel Max Gershenoff).  The Erlikhs do not deny that this statement was made.

Meanwhile, the Erlikhs had their own litigation strategy.  The Court gave the Erlikhs a

second bite at the pleading-amendment apple, and set October 12, 2012 as the new deadline to

file motions to amend pleadings.  Docket Entry 10/1/2012.  The Erlikhs did not make a motion.

The Erlikhs had complaints regarding Plaintiffs' participation in discovery, and on September

27, 2012, Ruslan Erlikh filed a first motion to compel.  Docket No. 77.  On February 22, 2013,

Ruslan Erlikh filed a second motion to compel, asking the Court to compel Plaintiffs to turn over

documents responsive to the following descriptions:

1. GEICO Market Share Study from 2007-2010;
2. All the research, actuarial studies, and internal documentation
   and communication that went into developing and adopting this
   business decision
   a. The actuarial studies and fiscal related to:
      1. The cost/benefit analysis of denying claims and
         forcing claims into litigation or arbitration;
      2. The cost/benefit analysis of the interest earned
         on claim funds while the claim is pending; and
      3. The investment decisions for claim funds while
         the claim is pending.
3. The names of all accountants and other employees or
   contracted parties that compiled the actuarial data on this case;
4. The name of GEICO's chief liaison to Plaintiff's counsel on
   this case;
5. The names of other physicians and/or medical practices in the
   State of New York against whom GEICO has filed a lawsuit, or
   threatened to file a lawsuit, similar to this case in the past 7
   years[, and settlement documents arising from those lawsuits];
6. All billing to GEICO from Dr. Ciancimino and all of his clinics
   and/or practices for the past 4 years;
7. [T]he names of each Eastchester Precision Medical employee
   that GEICO alleged rendered radiology services without proper
   credentials.

Docket No. 91.

GEICO never opposed Ruslan Erlikh's motion to compel. According to GEICO, after achieving the $550,000.00 settlement against Eastchester and after hearing the Erlikhs say at the February 4, 2013 settlement conference that they had no money with which to pay any judgment against them, GEICO instead, on February 25, 2013, contacted the Erlikhs to ask if they would stipulate to the dismissal of GEICO's claims against them pursuant to FRCP 41(a)(1). Docket No. 93-2 ¶¶ 4-5. The Erlikhs refused. Id.

GEICO then filed a motion under FRCP 41(a)(2) to dismiss its claims against the Erlikhs. Docket No. 93, 94. The Parties fully briefed the motion. Docket No. 93, 94, 101. In his response in opposition to GEICO's FRCP 41(a)(2) motion, Ruslan Erlikh asked the Court to deny it, or, in the alternative, to wait to grant it until after Plaintiffs fully complied with the Erlikhs' outstanding discovery demands. Docket No. 101. Ruslan Erlikh argued that GEICO sought to dismiss the case rather than to have to produce documents responsive to the Erlikh's document request that would portray GEICO's business and litigation model in a damaging light. Id.

I heard oral argument relating to Plaintiffs' FRCP 41(a)(2) motion to dismiss. Docket No. 102. Ruslan Erlikh made various arguments in opposition to the FRCP 41(a)(2) motion, nearly all of which leveled claims against Plaintiffs. Docket No. 102 at 3:12-6:17. I pointed out that he had never filed any counterclaims throughout the entire litigation such that even if the FRCP 41(a)(2) motion were denied, Ruslan Erlikh was not positioned to pursue the relief he sought. Docket No. 102 at 10:10-12. On hearing Ruslan Erlikh's statements about wishing to bring counterclaims, GEICO made the following motion to the Court:

> With respect to our [FRCP 41(a)(2)] motion to dismiss, . . . to the
> extent that [Ruslan Erlikh is] going to assert counterclaims against
> GEICO, we would ask that our [FRCP 41(a)(2)] motion be held in

6

> abeyance pending the disposition of any . . . motion to assert
> counterclaims . . . .

Docket No. 102 at 46:19-47:5.  GEICO stated that in the event that this Court were to deny

Ruslan Erlikh's motion to amend the answer to include counterclaims, GEICO once again would

argue to dismiss its claims, as they were not, according to GEICO, "brought in an unduly

vexatious manner by GEICO against the defendants."  Docket No. 102 at 47:3-5.

　　　Shortly after the conference, Ruslan Erlikh filed the counterclaims, Docket Nos. 104,

106.  I treated that filing as a constructive motion for leave to amend the answer to include the

counterclaims, and set a briefing schedule, Docket Entry 8/19/2013.

### b.  Facts Relating To The Proposed Counterclaim

　　　The following facts are derived from Ruslan Erlikh's proposed amended answer with

counterclaims.  Docket No. 106 (amending the proposed amended answer from its original filing

at Docket No. 104).  Since 2010, GEICO has filed forty-six cases against different defendants

seeking relief that is similar to the relief sought in this case.  Id. ¶ 7.  In many of these cases,

including the instant case, GEICO settled the case with the physician owner of the medical

professional corporation, who GEICO claims does not own the professional corporation

(rendering the corporation ineligible to claim or collect benefits under New York no-fault

regulations).  Id. ¶ 8.  This settlement process involves GEICO taking a confession of judgment

against the medical professional corporation for more money than GEICO ever paid it in claims,

after which GEICO proceeds to collect on the judgment by seeking payment of the medical

professional corporations' accounts receivables with other insurance companies.  Id.  According

to Ruslan Erlikh, this conduct is unlawful insofar as GEICO should not be permitted to allege

that no-fault claims are fraudulent when submitted to GEICO, but then turn a blind eye to that

fact when GEICO executes the judgment by collecting on the exact same kind of claims from other fellow insurance companies.

In certain cases, for example <u>GEICO v. Hollis</u>, No. 10 Civ. 4341 (ILG) (RML) (E.D.N.Y.), GEICO sold the judgment it obtained from the medical professional corporation to the very management defendants that GEICO originally claimed secretly owned and controlled the medical professional corporation in contravention of the law.  <u>Docket No. 106</u> ¶ 9.  As a result, GEICO obtained liquid cash from the management defendants in <u>Hollis</u>, leaving the management defendants to collect on the claims outstanding against other insurance companies, despite GEICO's position that the management defendants were not lawfully able to so collect. <u>Id.</u>

In the instant case, according to Ruslan Erlikh, GEICO entered into a nefarious agreement with Dr. Ciancimino, the successor owner to Eastchester after Dr. Hazel stepped down.  <u>Id.</u> ¶ 10.  The allegation is that GEICO coerced Dr. Ciancimino into settling GEICO's claims against Eastchester for $550,000.00 in exchange for GEICO's promise that they would not sue Dr. Ciancimino and others for their violation of New York no-fault laws relative to another, independent medical professional corporation called Bromer Medical, PC ("Bromer Medical").  <u>Id.</u>  Dr. Ciancimino's agreement to settle GEICO's claims against Eastchester for $550,000.00 was not motivated by any understanding of Eastchester's wrongdoing or lack thereof insofar as Dr. Ciancimino has no knowledge of any of the negotiations or contracts involved in Eastchester's startup.  <u>Id.</u> ¶ 11.  The settlement between GEICO and Eastchester required Dr. Ciancimino to sign a false affidavit concerning his acquisition of Eastchester.  <u>Id.</u> ¶ 10.

Ruslan Erlikh spent time and money creating and building business for Precision and its relationship with Eastchester.  Id. ¶ 12.  Eastchester owes Ruslan Erlikh money pursuant to certain terms, but Eastchester no longer has funds with which to pay Ruslan Erlikh, as a result of the improper $550,000.00 settlement between Plaintiffs and Eastchester.  Id.

In light of the foregoing facts, Ruslan Erlikh requests that the Court grant him leave to bring counterclaims against GEICO under New York law for fraud, id. ¶¶ 13-17; intentionally interfering with a contract, id. ¶¶ 18-20; and violating the New York General Business Law, N.Y. Bus. L. § 349, id. ¶¶ 21-25.

As to the fraud claim, Ruslan Erlikh alleges that over the course of three years, GEICO systematically coerced small medical practices into waiving their receivables against GEICO by threatening expensive legal proceedings.  Id. ¶ 14.  In addition, GEICO required that these medical practices assign GEICO insurance receivables to which GEICO is not, and knows it is not, entitled.  Id.  GEICO then collects on the receivables from other insurances carriers.  Id. ¶ 15.  In the instant case, according to Ruslan Erlikh, both GEICO and Dr. Ciancimino have made material misrepresentations to the other insurance carriers while collecting the receivables.  Id. ¶ 16.  In addition, Ruslan Erlikh alleges that GEICO and Dr. Ciancimino have made material misrepresentations to the Court as well as to Ruslan Erlikh, causing Ruslan Erlikh $1,000,000.00 in damages.  Id. ¶ 17.

As to the intentional interference with advantageous contractual relations claim, Ruslan Erlikh alleges that when GEICO strong-armed Dr. Ciancimino into committing Eastchester to a bad-faith settlement, it intentionally interfered with Ruslan Erlikh's relationship with Precision and Precision's relationship with Eastchester.  Id. ¶ 19.  This damaged Ruslan Erlikh in the amount of approximately $1,000,000.00.  Id. ¶ 20.

As to the violation of New York General Business Law § 349, Ruslan Erlikh alleges that GEICO's use of its financial power in commencing and prosecuting the forty-six civil RICO cases has had a dramatic and widespread effect on the automobile insurance industry in New York, in particular on policy holders, eligible injured persons under the policies, medical providers, support staff, companies doing business with medical professional corporations, and all insurance carriers.  Id. ¶ 22.  According to Ruslan Erlikh, GEICO's RICO cases amount to "deceptive acts and practices in the conduct of their business"; have been systematically undertaken over a three-year period; and are consumer-oriented in that they have a direct effect on the availability and delivery of healthcare services to all persons insured by GEICO or injured in auto accidents involving a vehicle insured by GEICO.  Id. ¶¶ 23-24.  Ruslan Erlikh claims damages in the amount of $1,000,000.00 for the alleged violation of New York Business Law § 349, and he also requests that the Court order GEICO to pay punitive damages.  Id. ¶ 25.

## II.    Legal Standards

### a.  Pleading Amendment

The Federal Rules of Civil Procedure state that "[t]he court should freely give leave [for complaint amendment] when justice so requires.  Fed. R. Civ. P. 15(a)(2).  "This permissive standard is consistent with our strong preference for resolving disputes on the merits."  Williams v. Citigroup, Inc., 659 F.3d 208, 212-13 (2d Cir. 2011).

The Second Circuit applies a "permissive standard" to complaint amendments.  "[J]ustice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party."  Soley v. Wasserman, No. 08 Civ. 9262 (KMW) (FM), 2013 WL 6244146, at *1 (S.D.N.Y. Dec. 3, 2013) (citing S.S. Silberblatt, Inc. v. East Harlem Pilot Block—Building 1 Housing Dev. Fund Co., Inc., 608 F.2d 28, 42 (2d Cir.

1979)).  In addition, futility of amendment will serve to prevent an amendment.  See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002).

"[A] pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim."  Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks & citation omitted).  "A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Id. (citation omitted).  However, just as with a litigant represented by counsel, a pro se litigant's petition for leave to amend "may be denied when amendment would be futile."  Id.

### b.  FRCP 41(a)(2) Motion To Dismiss

FRCP provides that, absent agreement between the parties, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Kwan v. Schlein, 634 F.3d 224, 230 (2d Cir. 2011).  The Second Circuit has recognized "[t]wo lines of authority" that a district court may use to analyze the propriety of granting a FRCP 41(a)(2) motion.  Id.

First, a district court should consider that "such a dismissal would be improper if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit."  Camilli v. Grimes, 436 F.3d 120, 123 (2d Cir. 2006).  The second line of authority holds that "the test for dismissal without prejudice involves consideration of several factors, known as the Zagano factors."  Id.  The Zagano factors include: "(1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplication of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to

dismiss." <u>Kwan</u>, 634 F.3d at 230 (citing <u>Zagano v. Fordham Univ.</u>, 900 F.2d 12, 14 (2d Cir. 1990)).

### III.   Legal Discussion

#### a.   Ruslan Erlikh's Motion To Amend His Answer To Include Counterclaims Should Be Denied

##### i.   Undue Delay

FRCP 15(a) provides that a party may amend his pleading "with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  If a party seeks the court's leave, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit applies a "permissive standard" to complaint amendments.  "[J]ustice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party."  <u>S.S. Silberblatt, Inc.</u>, 608 F.2d at 42.  In <u>Parker v. Columbia Pictures Industries</u>, 204 F.3d 326, 339 (2d Cir. 2000), the Second Circuit discussed the interplay between FRCP 15(a)'s requirement that courts grant leave to amend pleadings "freely . . . where justice so requires," and FRCP 16(b)'s requirement that a court's scheduling orders "shall not be modified except upon a showing of good cause."  Fed. R. Civ. P. 15(a); Fed. R. Civ. P. 16(b).  The <u>Parker</u> Court held that

> despite the more lenient standard of [FRCP] 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.  Moreover, . . . a finding of 'good cause' depends on the diligence of the moving party.

<u>Id.</u> at 340.

Here, justice does not require this Court to permit Ruslan Erlikh to amend his answer to include his proposed counterclaims as a matter of course because he has acted with undue delay

and a lack of diligence.  Fed. R. Civ. P. 15(a)(2).  Ruslan Erlikh filed his answer to the complaint on June 17, 2011, yet he did not file his constructive motion to amend his answer until July 12, 2013, despite the fact that the Court set two interim deadlines to allow him to amend, both of which Ruslan Erlikh let pass without action.  Docket No. 30.

The Court first set May 22, 2012 as the deadline for the Parties to file any motions to amend their pleadings.  Docket Entry 3/22/2012.  A few days later, the Erlikhs' attorney withdrew from representing him.  Docket Entry 3/28/2012.  Ruslan Erlikh, representing himself pro se, did not make a motion to amend his answer prior to the deadline.  Ruslan Erlikh did make a motion to stay the pretrial schedule during this period, showing a level of engagement with and understanding of civil procedure.  Docket No. 56.

In response to Ruslan Erlikh's later protest that he still wished to file counterclaims, I gave Ruslan Erlikh a second date—October 12, 2012—by which to file a motion to amend his answer to include counterclaims.  Docket No. 103 at 44:23.  In light of the fact that the Erlikhs were representing themselves pro se at that time, I explained during an in-person conference what making that motion to amend would entail.  Docket No. 103 at 44:21-45:14.  Ruslan Erlikh did not file any motion to amend his answer to include counterclaims by this second deadline.  In addition, Ruslan Erlikh did not communicate that he wished to file counterclaims during later communications with the Court, for example, during an unsuccessful settlement conference on February 4, 2013, Docket Entry 2/4/2013, or in his letter to the Court about a discovery dispute on February 22, 2013, Docket No. 91.

I find that Ruslan Erlikh did not comply with the Court's two deadlines for making a motion to amend his answer to include counterclaims, and that he has not shown good cause to excuse his failure.  See, e.g., Parker, 204 F.3d at 340-41 (collecting cases and affirming the

13

district court's decision that the plaintiff had not shown good cause for failing to comply with the court's deadline); Werking v. Andrews, 526 F. App'x 94, 96 (2d Cir. May 3, 2013) (affirming the district court's denial of leave to amend because, among other reasons, the motion to amend was untimely, having been filed "approximately eight months after the deadline set by the district court").  Only when this Court on June 6, 2013 held oral argument on GEICO's FRCP 41(a)(2) motion to dismiss its claims against the Erlikhs (which was approximately eight months after the Court's second pleading amendment motion deadline passed) did Ruslan Erlikh raise the possibility of filing counterclaims.  Ruslan Erlikh then filed his proposed counterclaims.[4] Docket No. 104.  In other words, Ruslan Erlikh belatedly became motivated to file his motion only well after GEICO reached a point at which, to its view, the Erlikh claims were no longer worth pursuing because GEICO had "already recovered a significant benefit through this action" from Eastchester, Docket No. 102 at 48:14-15; and the Erlikhs were allegedly indigent and would be unable to pay any judgment in the event that GEICO obtained one, Docket No. 102 at 48:12.  Ruslan Erlikh does not attempt to explain his failure to meet the Court's deadlines at all, either in his papers or during conference with the Court, except to say in conclusory fashion that his previous lawyers were "not the sharpest pencils," Docket No. 102 at 8:20-22, and that "[t]he interests of justice [are] plainly served by allowing the [c]ounterclaim[s] to stand[,]" Docket No. 108 at 8.  Justice does not require this Court to permit Ruslan Erlikh's pleading amendment at this late stage.

---

[4] Ruslan Erlikh had asked for leave to file the pleading amendment motion during the conference, but I deferred judgment in light of GEICO's pending Rule 41(a)(2) motion.  Docket No. 102 at 10:10-12.  Approximately forty days later, Ruslan Erlikh filed the nine-page document.  Docket No. 104.

I am aware of the fact that Ruslan Erlikh has represented himself pro se at times during this litigation, but the liberal standard accorded to pro se parties "is not without its limits." Stinson v. Sheriff's Dep't, 499 F. Supp. 259, 263 (S.D.N.Y. 1980); see Eng v. Therrien, No. 04 Civ. 1146 (NAM), 2008 WL 141794, at *5 n. 10 (N.D.N.Y. Jan. 11, 2008); Gil v. Vogliano, 131 F. Supp. 2d 486, 491 (S.D.N.Y. 2001). Here, Ruslan Erlikh has pushed well past those limits. As a preliminary note, Ruslan Erlikh had counsel at various times during this action, including when this Court first set the deadline for motions for pleading amendment. Docket Entry 3/22/2012; Docket No. 56.

Ruslan Erlikh claims that his counsel prejudiced him, but he can hardly claim that his failure to meet the pleading amendment deadline was anyone's fault but his own. Ruslan Erlikh does not claim that he misunderstood the deadlines. Moreover, he has been engaged during status conferences, conversant with the facts of this case and shown an understanding of his obligations as a litigant. Indeed, proof that Ruslan Erlikh was engaged in the litigation is the fact that, in addition to the aforementioned motion for a stay, he filed (1) a response in opposition to GEICO's motions for sanctions, Docket No. 76; (2) a first discovery motion, Docket No. 77; and (3) a second discovery motion, Docket No. 91.

In light of the foregoing, I respectfully recommend that the District Judge **find** that Ruslan Erlikh's motion to amend his answer to include counterclaims was submitted with undue and inexcusable delay and that the District Judge **deny** Ruslan Erlikh leave to file it on that basis.

### ii. Ruslan Erlikh Does Not Allege Sufficient Facts To Set Forth His Counterclaims

FRCP 8(a) provides that a pleading set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon

which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)). A pleading must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its fact." Freidus v. Barclays Bank PLC, 734 F.3d 132, 137-38 (2d Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)).

FRCP 8(a)'s "simplified pleading standard applies to all civil actions, with limited exceptions." Swierkiewicz, 534 U.S. at 513. FRCP 9(b) is an exception, providing that greater pleading particularity is required "in all averments of fraud or mistake." Id. at 513 (citing Fed. R. Civ. P. 9(b)).[5]

## 1. Ruslan Erlikh Does Not Allege Sufficient Facts To Set Forth A Fraud Claim

"Proof of fraud under New York law requires a showing that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damages as a result of such reliance." Houraney v. Burton & Assoc., P.C., 701 F. Supp. 2d 258, 260 (E.D.N.Y. 2010) (citing Wall v. CSX Transp., Inc., 471 F.3d 410, 415-16 (2d Cir. 2006) (quotations & citations omitted)). "[FRCP] 9(b) sets a heightened pleading standard for a claim of fraud. Fraud must be pleaded with particularity while malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Houraney, 701 F. Supp. 2d at 260 (citing Fed. R. Civ. P. 9(b)). "In order to comply with [FRCP] 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

---

[5] New York has a similar requirement for pleading fraud claims with particularity. See N.Y.C.P.L.R. § 3016(b).

fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quotations & citations omitted).

    Here, Ruslan Erlikh alleges that "GEICO over the course of three years has engaged in a systematic pattern of fraud by utilizing their financial leverage to intimidate and bully small medical practices into waiving their medical receivables and assigning to GEICO money which GEICO is not, and knows it is not, entitled to." Docket No. 106 ¶ 14.  Next, according to Ruslan Erlikh, GEICO "proceeds to collect on the receivables from other insurance carriers." Id. ¶ 15. Rather than offer specifics as to how GEICO's "systematic pattern" constitutes fraud, Ruslan Erlikh states simply that

> GEICO's strong-armed settlements with the professional corporations are fraudulent in many respects, both the PC (in this case Dr. Ciancimino) and GEICO make material misrepresentations and omissions both to the other insurance carriers, the Court as well as the people and companies who provided the services to the PCs and are entitled to be paid what is owed to them, in this case me.

Id. ¶ 16.

    That being the extent of Ruslan Erlikh's fraud allegations, I find that the fraud counterclaim fails to meet the FRCP 9(b) pleading-with-particularity requirement.  First, Ruslan Erlikh implies that GEICO's intimidation of small medical practices through the threat of litigation amounts to a "material false representation," but he does not allege with particularity any specific fraudulent statement.  Id. ¶ 14; see Schandler v. N.Y. Life Ins. Co., No. 09 Civ. 10463 (LLM), 2011 WL 1642574, at *5 (S.D.N.Y. Apr. 26, 2011) ("[A] plaintiff must state with particularity the contents and circumstances of the allegedly fraudulent misrepresentations."); Jacobs v. Haber, 232 A.D.2d 372, 372 (2d Dep't 1996) (finding that the lower court properly dismissed the fraud claim because the plaintiff "failed to allege the specific nature or content of

the purported misrepresentation"); cf. Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp. 2d
609, 618 (S.D.N.Y. 2003) (finding that the complaint properly pleaded fraud because it "alleged
four misrepresentations and has explained their content, who made them . . . , when they were
made . . . , where they were made . . . , and why they were made . . . ."). It seems to be the case
that the reason that Ruslan Erlikh cannot identify the fraudulent statement with particularity is
because his allegations suggest that GEICO's fraudulent misrepresentations, to the extent they
were made, were made to other insurance carriers, and not to Ruslan Erlikh himself. See Lerner,
459 F.3d at 290; Jones v. Albany Cty. Civil Serv. Comm'n, 985 F. Supp. 280, 283 (N.D.N.Y.
1997) (dismissing the plaintiff's fraud claim on the pleadings because the plaintiff failed to
allege that the defendant made any misrepresentation to the plaintiff himself, that the plaintiff
actually relied upon it, or any resulting damages); Mandarin Trading Ltd. v. Wildenstein, 16
N.Y.3d 173, 178 (2011) ("Generally, in a claim for fraudulent misrepresentation, a plaintiff must
allege a misrepresentation . . . which was false and known to be false by defendant . . . .")
(internal quotation marks & citation omitted); Kuiters v. Kukulka, 57 A.D.3d 1469, 1469 (4th
Dep't 2008) ("The allegedly fraudulent misrepresentations were not made to plaintiffs, and
plaintiffs thus lack standing to assert a fraud cause of action against defendants."); Aymes v.
Gateway Demolition, Inc., 30 A.D.3d 196, 196 (1st Dep't 2006) ("To the extent plaintiff asserts
a fraud claim, he lacks standing because the alleged misrepresentations were made [to a third
party], not to plaintiff . . . ."). Thus, both statements and standing are lacking.

Even if a fraudulent statement were directed at Ruslan Erlikh himself, which he does not
allege, he does not allege that he relied upon it with knowledge of its falsity. In fact, it appears,
from Ruslan Erlikh's defense in this litigation, that his position is that the allegation of a state
licensing violation is false such that he was never induced to do anything. His complaint does

not allege any consequential action taken by Ruslan Erlikh.  In <u>Royal Am. Managers, Inc. v. IRC Holding Corp.</u>, 885 F.2d 1011, 1016 (2d Cir. 1989), the Second Circuit stated that "[f]or a claim based on false representation to be successful under New York law, the plaintiff must have relied on the representation and such reliance must have been justifiable."

Indeed, throughout the proposed fraud counterclaim, Ruslan Erlikh alleges that the statement was directed at Eastchester and other third-party insurance carriers, and not to him.  As a result, the allegations say nothing about GEICO's intent to defraud Ruslan Erlikh, or that he reasonably relied upon the misrepresentation and consequently suffered damages.  Accordingly, Ruslan Erlikh fails to allege a fraud claim under New York law.

For the foregoing reasons, I respectfully recommend that the District Judge **deny** Ruslan Erlikh's motion to amend his answer to include a counterclaim that GEICO committed fraud against him.

## 2. Ruslan Erlikh Does Not Allege Sufficient Facts To Set Forth A Tortious Interference With A Contract Claim

The Second Circuit recently observed, in an opinion certifying to the New York Court of Appeals a different question relating to the tort of tortious interference with a contract, that even New York's highest court "has noted [that] the contours of the tort under New York law are uncertain" and "murky."  <u>White Plains Coat & Apron Co., Inc. v. Cintas Corp.</u>, 460 F.3d 281, 285 (2d Cir. 2006).  "In order to prevail on a cause of action for tortious interference with contractual relations, a plaintiff must establish the existence of a valid contract between plaintiff and a third party, the defendant's intentional and unjustified procurement of the third party's breach of the contract, the actual breach of the contract, and the resulting damages."  <u>Katel Ltd. Liab. Co. v. AT&T Corp.</u>, 607 F.3d 60, 66 (2d Cir. 2010) (citing <u>Jim Ball Chrysler LLC v. Marong Chrysler-Plymouth, Inc.</u>, 19 A.D.3d 1094 (4th Dep't 2005)).  "The allegations cannot be

19

conclusory, but must include facts sufficient to support the conclusions to be drawn. Mere conclusions that third parties cancelled contracts because of [the defendant's] action will not withstand" a challenge of insufficient pleading. Tsadik v. Beth Israel Med. Ctr., 822 N.Y.S.2d 395, 399 (N.Y. Sup. Ct. 2006); see M.J. & K. Co. v. Matthew Bender & Co., 220 A.D.2d 488, 490 (2d Dep't 1995) (stating that the plaintiffs' mere contentions that third parties cancelled contracts with them because of the defendant's improper conduct, offered with no factual basis to support allegations, were insufficient to state cause of action for tortious interference with contract).

Ruslan Erlikh alludes vaguely to a contract between Eastchester and Ruslan Erlikh's company Precision. Docket No. 106 ¶ 12 ("I spent an enormous amount of time and effort creating and building the business and relationship for Precision Office Management and Eastchester Medical PC. I am owed an enormous amount of money pursuant to the terms of the contracts between the parties, including money that was surreptitiously waived by [Dr.] Ciancimino or taken illegally by GEICO."). Ruslan Erlikh also alleges that he had a relationship with Precision. Id. ¶ 19 ("GEICO's conduct on entering into a bad faith and strong-armed settlement with [Dr.] Ciancimino and [Eastchester] constitute[s] an intentional interference with my relationship with Precision Office Management Inc. and its relationship with [Eastchester].") The proposed counterclaim is thus based on a dual-breach theory: GEICO's alleged interference led to a breach in the Eastchester-Precision relationship which in turn led to a breach of the Erlikh-Precision relationship. (Notably, Precision is no longer appearing in this action and has not brought any claims.) This theory may theoretically be viable under New York law. See S&L Vitamins, Inc. v. Australian Gold, Inc., 521 F. Supp. 2d 188, 217 (E.D.N.Y. 2007) ("Whether [the defendant] is twice removed from the contractual relationship between [the

plaintiff] and third parties is irrelevant [to whether a tortious inference claim stands].   A

defendant can still be held liable for its tortious conduct despite its circuitous conduct."); <u>Benton</u>

<u>v. Kennedy-Van Saun Mfg. & Eng. Corp.</u>, 2 A.D.2d 27, 29 (1st Dep't 1956) (dismissing the

plaintiff's tortious interference claim against the sub-subcontractor defendant that the plaintiff

alleged had caused the breach of the principal contract through the breach of a sub-subcontract,

stating that it had been the plaintiff's burden to allege and prove that the defendant "intentionally

albeit indirectly brought that breach about").

   Even if Ruslan Erlikh's dual-breach theory were actionable, it leaves open the question of

whether Ruslan Erlikh has sufficiently alleged that GEICO intentionally and unjustifiably

procured the breaches by virtue of filing this lawsuit.   In <u>John Paul Mitchell Systems v. Pete-N-</u>

<u>Larry's Inc.</u>, 862 F. Supp. 1020, 1029 (W.D.N.Y. 1994), the hair-product manufacturer plaintiffs

brought a tortious interference claim against unauthorized distributors of its products, alleging

that the unauthorized distributor defendants had caused the breach of the plaintiffs' exclusive-

distribution contracts with authorized dealers.   The court dismissed the tortious interference

claim, stating that "[w]hile . . . the defendants are at least two steps removed from the contractual

relationship does not necessarily relieve them of liability, . . . the plaintiffs' claim fails to show

'inducement' of the breach."   <u>Id.</u>; <u>Sebastian Intern., Inc. v. Russolillo</u>, 162 F. Supp. 2d 1198,

1206 n.2 (C.D. Calif. 2001) (collecting cases in which knowledge of a contract's existence is

insufficient to support allegations that th[e] defendants 'induced' any breach").   Similarly, here,

Ruslan Erlikh does not sufficiently allege facts that GEICO intentionally procured any breach.

Ruslan Erlikh only alleges that GEICO's $550,000.00 settlement with Eastchester left

Eastchester insolvent and unable to pay Precision pursuant to the terms of the Eastchester-

Precision contract, which in turn rendered Precision unable to pay Ruslan Erlikh.   Even if this

was the ultimate effect of the settlement, Ruslan Erlikh does not allege that GEICO intended for

its litigation against and settlement with Eastchester to occasion Eastchester's breach of its

contract with Precision, or Precision's breach of its contract with Ruslan Erlikh.  See Ferrara v.

Leticia, Inc., No. 10 Civ. 1275 (JS) (ETB), 2012 WL 4344164, at *8 (E.D.N.Y. Sept. 21, 2012)

(dismissing the defendant's tortious-interference-with-a-contract counterclaim against the

plaintiff because the defendant only alleged that the plaintiff's conduct was malicious, but the

"defendant failed to allege that [the] plaintiffs' conduct was undertaken with the intent to procure

the alleged breach"); In re Coudert Bros. LLP, No. 11 Civ. 2785 (CM),  2012 WL 1267827, at *9

(S.D.N.Y. Apr. 12, 2012) (dismissing the complaint because, among other things, the plaintiff

"d[id] not allege[] that the [defendants] intentionally procured a breach . . . ."); In re Refco Inc.

Secs. Litig., 826 F. Supp. 2d 478, 521-22 (S.D.N.Y. 2011) (dismissing the plaintiff's tortious

interference claim because it is insufficient to satisfy the intent element by pleading only that the

breach was occasioned when the "defendant engaged in wrongful conduct that had the effect of

impairing a plaintiff's contract"); Martindale v. Gleasman, No. 07 Civ. 6517 (MAT), 2008 WL

2627457, at *8 (W.D.N.Y. June 27, 2008) ("[The] plaintiffs have failed to allege that [the

defendant] intentionally procured the breach of the [contracts] held with [the plaintiff] by [a third

party], without justification."); Montano v. City of Watervliet, No. 5529-03, 2006 WL 6145663

(Table), at *3 (N.Y. Sup. Ct. Oct. 13, 2006) (finding summary judgment in favor of the

defendant on the tortious interference claim because nothing in the record suggested that the

defendant had the requisite intent to cause a contract breach between the plaintiff and the third

party).

  Ruslan Erlikh also has not sufficiently alleged that GEICO unjustifiably interfered with

the contract.  There is an unjustifiable interference with a contract "when there is knowledge of a

contract, and a competitor takes an active part in persuading a party to the contract to breach it by offering better terms or other incentives." State Enters., Inc. v. Southridge Co-op. Section 1, Inc., 18 A.D.2d 226, 227-28 (1st Dep't 1964); see White Plains Coat & Apron Co., Inc., 460 F.3d at 285 (citing State Enters., 18 A.D.2d at 227-28); Conte v. Cty. of Nassau, No. 06 Civ. 4746 (JFB) (ETB), 2013 WL 3878738, at *19 (E.D.N.Y. July 26, 2013) (same); cf. Goodman Mfg. Co. L.P. v. Raytheon Co., 1999 WL 681382, at *12 (S.D.N.Y. Aug. 31, 1999) (noting that the plaintiffs properly alleged "improper purpose or tortious intent" by claiming that the defendants intended to compete with the plaintiffs in the home laundry business). Here, GEICO and Precision are not competitors. Ruslan Erlikh also does not allege that GEICO persuaded Eastchester to breach its contract with Precision; he only alleges that GEICO's settlement with Eastchester rendered the latter insolvent and unable to pay Precision. See Waste Conversion Tech., Inc. v. Midstate Recovery, LLC, No. AANCV044000948, 2008 WL 5481231, at *21 (Conn. Super. Dec. 3, 2008) (citing State Enters., 18 A.D. at 238, and discussing the unjustifiable-interference element as requiring "that the defendant took an active part in persuading a party to a contract to breach it"). This is not an allegation of persuasion or of a request to breach.

For the foregoing reasons, I respectfully recommend that the District Judge **deny** Ruslan Erlikh's motion to amend his answer to include a counterclaim against GEICO for intentional interference with a contract.

### 3. Ruslan Erlikh Does Not Allege Sufficient Facts To Set Forth A New York Business Law § 349 Claim

Section 349(a) of New York's General Business Law declares as unlawful "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ." Gotlin ex rel. Cty. of Richmond v. Lederman, 483 F. App'x 583, 587

(2d Cir. May 1, 2012) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 24 (1995)); N.Y. Gen. Bus. L. § 349.  "Deceptive acts or practices are those likely to mislead a reasonable consumer acting reasonably under the circumstances."  Id.  The provision applies "to virtually all economic activity that occurs in New York State, including the provision of medical services, in an effort to secure an honest market place where trust, and not deception, prevails."  Id. (quotations & citations omitted).

Under New York law, a claim for violation of Section 349 requires a plaintiff to allege "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."  U1IT4less, Inc. v. FedEx Corp., 896 F. Supp. 2d 275, 294-95 (S.D.N.Y. 2012); see Naples v. Stefanelli, 972 F. Supp. 2d 373, 398 (E.D.N.Y. 2013); Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000).

Ruslan Erlikh has not pleaded that GEICO's practice was consumer-oriented, the first element of a Section 349 claim.  While the "typical violation contemplated by [Section 349] involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods," Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch, 593 F. Supp. 743, 751 (S.D.N.Y. 1984), "[c]onsumer-oriented" can also mean "that the acts or practices have a broader impact on consumers at large,'" Oswego, 85 N.Y.2d at 25.  Either way, Section 349 is ultimately concerned with the direct or indirect impact of a deceptive act or practice upon a consumer, defined as "an individual or natural person who purchases goods, services or property for 'personal, family or household purposes.'"  Naples, 972 F. Supp. 2d at 399 (citing Cruz v. NYNEX Info. Res., 263 A.D.2d 285, 289 (1st Dep't 2000)).  "The critical question . . . is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor."  Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir.

24

1995).  Ruslan Erlikh argues that he has standing to bring this Section 349 counterclaim under this latter construction, i.e., that GEICO's practice of "utilizing its financial power and leverage in commencing and prosecuting" some forty-six civil RICO cases to date "has a dramatic and widespread effect on the automobile industry in New York."  Docket No. 106 ¶ 22.

"[A]n action under [Section] 349 is not subject to the pleading-with-particularity requirements of [FRCP] 9(b), but need only meet the bare-bones notice-pleading requirements of [FRCP] 8(a)."  Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005); see Thomas v. JPMorgan Chase & Co., 811 F. Supp. 2d 781, 794 (S.D.N.Y. 2011) (citing to Pelman ex rel. Pelman, 396 F.3d at 511).  Ruslan Erlikh has failed to meet his pleading burden even under this more lenient standard, because stating that GEICO's acts and practices have an "effect on the automobile [insurance] industry in New York" does not sufficiently describe the nature of that effect as a consumer-oriented one.[6]  Docket No. 106 ¶ 22.  For instance, if Ruslan Erlikh meant that GEICO's practices have an effect on no-fault clinics' earnings, or by extension, on the revenue of such clinics' third-party debtors, this would not satisfy the definition of consumer-oriented, as clinics and business entities are not individuals or natural persons who "purchase[] goods, services or property for 'personal, family or household purposes.'"  Cruz, 263 A.D.2d at 289; see Med. Soc'y of State of N.Y. v. Oxford Health Plans, Inc., 15 A.D.3d 206, 206 (1st Dep't 2005) (affirming the denial of the plaintiff's Section 349 claim because "[the insurance company defendant's] acts and practices are directed at physicians, not consumers").

Were the Court to speculate, it could conceive of an allegation that arguably comes closer to casting GEICO's practices as consumer-oriented, for example, that GEICO's allegedly

---

[6] Ruslan Erlikh's proposed counterclaims say that GEICO's acts affect "the automobile industry," but this Court understands Ruslan Erlikh to mean the automobile insurance industry. Docket No. 106 ¶ 22.

unjustifiable denials of claims reduce the quality of consumers' health care by causing medical service providers to conservatively diagnose what procedures are "medically necessary" for fear that combative insurance companies will not process debatable claims.  See Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 376 (E.D.N.Y. 2012) (holding that an automobile insurer plaintiff's allegations of fraudulent claims were consumer-oriented because the practice allegedly "unlawfully stripped millions of dollars from [the automobile insurer], which has likely increased the premiums of consumers"); Greenspan v. Allstate Ins. Co., 937 F. Supp. 288, 294 (S.D.N.Y. 1996) (stating that while an insurance company's denials of claims most immediately "impede [the physician] plaintiffs' ability to earn a living," the practice's aggregated effects impact consumers by erecting barriers to claims reimbursement that undermined the "inexpensive, efficient method of compensating accident victims").[7]  However, Ruslan Erlikh's proposed Section 349 counterclaim does not allege that GEICO's acts and practices have had this effect on the quality of consumers' health care services.

Even if Ruslan Erlikh had properly pleaded consumer orientation, his Section 349 claim still should be dismissed because he insufficiently pleads that GEICO's practice was materially

---

[7] It should be noted that courts have also rejected the argument that an insurance company's denials of claims are consumer-oriented.  See Four Winds of Saratoga Inc. v. Blue Cross & Blue Shield of Cent. N.Y. Inc., 241 A.D.2d 906, 907 (3d Dep't 1997) (stating that Section 349 "has to do with acts and practices which 'have a broad impact on consumers at large,' . . . [whereas t]he instant claim between these two parties is not a cause of action in contemplation of this statute"); Gross v. Empire Healthchoice Assur., Inc., 819 N.Y.S.2d 210 (Table), at *9 (N.Y. Sup. Ct. 2006) (dismissing the plaintiff's Section 349 claim because the complaint did not "state facts that show a wide-ranging impact upon the public consumers as a result of [the defendants'] alleged acts and practices.  Instead, it only contains a conclusory allegation that the claims administration practices of [the defendants] have a direct and adverse impact upon the general public.").  In determining whether an insurance company's denials of claims rises to the level of consumer-oriented conduct, a court can consider, inter alia, whether the conduct is "not an ordinary or recurring consumer transaction, rather a 'single shot transaction' involving complex arrangements, knowledgeable and experiences parties and large sums of money."  Genesco, 593 F. Supp. at 752 (citation omitted).

misleading, the second of the three Section 349 elements.  See U1IT4less, Inc., 896 F. Supp. 2d

at 294-95.  First, the counterclaims allege that GEICO threatened lawsuits if the medical

professional corporations did not settle; but this is not deception, particularly as GEICO

commenced some of these litigations.  See Derbaremdiker v. Applebee's Intern., Inc., No. 12

Civ. 1058 (KAM), 2012 WL 4482057, at *5 (E.D.N.Y. Sept. 26, 2012) (rejecting the plaintiff's

argument that a document was misleading when the face of the communication meant what it

said); Tasini v. AOL, Inc., 851 F. Supp. 2d 734, 744 (S.D.N.Y. 2012) (finding that the

defendants' attempts to dissuade the plaintiffs' from creating a competing Web site was not

misleading); Leider v. Ralfe, 387 F. Supp. 2d 283, 295 (S.D.N.Y. 2005) (rejecting a Section 349

claim because defendants' monopolistic practices, "while certainly reprehensible, [were] not

secretive"); Zuckerman v. BMG Direct Mktg, Inc., 290 A.D.2d 330 (1st Dep't 2002) (holding

that shipping and handling fees were not deceptive where amounts were disclosed).  Second, in

order to satisfy the "materially misleading" element, the act or practice must be directed to a

reasonable consumer; the allegedly problematic GEICO practices were directed to doctors and

medical corporations, not patients or consumers.  See Yong Ki Hong v. KBS Am., Inc., 951 F.

Supp. 2d 402, 420 (E.D.N.Y. 2013) (stating that while a price-fixing scheme "may be illegal

under antitrust laws due to their anticompetitive effects, arrangements of this nature do not

necessarily mislead customers, or dupe them into making purchases they otherwise would not

have made.  These schemes may result in artificially inflated costs, but without additional

evidence of materially misleading conduct, they cannot in and of themselves undergird a

successful [Section 349] claim."); Reit v. Yelp!, Inc., 907 N.Y.S.2d 411, 415 (N.Y. Sup. Ct.

2010) (dismissing the plaintiff's Section 349 claim because the allegedly misleading statement

was directed to business owners and therefore was "not materially misleading to a reasonable consumer seeking [the service]").

Ruslan Erlikh also alleges that GEICO has a practice of collecting on its judgments against fraudulently incorporated medical professional corporations by seizing their accounts receivables and collecting them from other insurance carriers.  Docket No. 106 ¶¶ 15-16. According to Ruslan Erlikh, GEICO is behaving hypocritically by taking the legal position that it should not have to pay insurance claims derived from work performed by fraudulently incorporated medical professional corporations, yet at the same time collecting on accounts receivable from other insurance carriers derived from work performed by fraudulently incorporated medical professional corporations.  It is not apparent from Ruslan Erlikh's argument how GEICO's collection practice, however incongruous with its position as a plaintiff in this action, works a detriment upon consumers of medical services in New York.  One could argue that if the fraudulently incorporated medical professional corporation itself were allowed to collect the money, this would provide an incentive for other non-physicians to fraudulently incorporate medical professional corporations that would in turn subject consumers to less professional control of the medical services industry.  See State Farm Mut. Ins. Co. v. Mallela, 4 N.Y.3d 313, 321 (2005) ("[W]e rest our holding on the Superintendent's [of Insurance] amended regulation declaring fraudulent licensed corporations ineligible for reimbursement . . . ."); see also State Farm Mut. Auto. Ins. Co. v. Mallela, 372 F.3d 500, 503 (2d Cir. 2004) (noting that New York law forbids nonphysicians from employing physicians or controlling their practices because of New York's longstanding concern that the "corporate practice of medicine" would undermine the quality of care afforded to plaintiffs).  But GEICO is not itself a fraudulently incorporated medical professional corporation.  GEICO's alleged independent enforcement may

28

be questionable insofar as it may seek to have other insurance carriers pay on claims that GEICO

has said the law absolves insurance carriers from paying, but Ruslan Erlikh has not alleged to

this Court the negative impact that GEICO's collection practice has on consumers in New York

under Section 349.

    For the foregoing reasons, I respectfully recommend that the District Judge **deny** Ruslan

Erlikh's motion to amend his answer to include a counterclaim against GEICO for violating

Section 349.

### iii.  Noerr-Pennington Doctrine Bars Ruslan Erlikh's Counterclaims Against GEICO

    The First Amendment protects the right of the people to "petition the Government for

redress of grievances."  U.S. Const. Amend. I.  "Noerr-Pennington immunity is a First

Amendment-based doctrine that protects private parties from liability . . . in connection with

efforts to petition" the government for redress of a grievance.  Freedom Holdings, Inc. v. Spitzer,

357 F.3d 205, 233 (2d Cir. 2004) (citing E.R.R. Presidents Conference v. Noerr Motor Freight,

Inc., 365 U.S. 127 (1961), and United Mine Workers of Am. v. Pennington, 381 U.S. 657

(1965)).  "The right of access to the courts is indeed but one aspect of the right of petition"

protected by the doctrine.  California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508,

510 (1972).

    Although Noerr-Pennington doctrine was "first developed in the context of antitrust

litigation," it was later extended to other areas of the law to assure that "a party's right to file a

lawsuit without liability is unimpeachable unless the suit is a 'sham,' meaning 'objectively

baseless.'"  Ginx, Inc. v. Soho Alliance, 720 F. Supp. 2d 342, 363 (S.D.N.Y. 2010) (holding that

Noerr-Pennington analysis applied in the civil rights context and finding that the defendants'

petition to the State Liquor Authority did not constitute tortious interference with a prospective

business advantage); see Primetime 24 Joint Venture v. Nat'l Broad. Co., 219 F.3d 92, 99-100 (2d Cir. 2000).  "Immunity under the Noerr-Pennington doctrine attaches regardless of whether the claim is based on a state or a federal cause of action."  Agfa Corp. v. United Mktg. Grp., Inc., No. 02 Civ. 8468 (LAP), 2003 WL 21555087, at *2 (S.D.N.Y. July 10, 2003) (citing Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 128-29 (3d Cir. 1999), for the proposition that "we have been presented with no persuasive reason why these state tort claims, based on the same petitioning activity as the federal claims, would not be barred by the Noerr-Pennington doctrine"); see DirecTV, Inc. v. Rowland, No. 04 Civ. 297S (JS), 2005 WL 189722, at *3-4 (W.D.N.Y. Jan. 22, 2005) (granting Noerr-Pennington immunity to a plaintiff against a New York Business Law § 349 counterclaim); Friends of Rockland Shelter Animals, Inc. ("FORSA") v. Mullen, 313 F. Supp. 3d 339, 342-43 (S.D.N.Y. 2004) (applying Noerr-Pennington to claim of tortious interference with business relationship); see also TFTF Capital Corp. v. Marcus Dairy, Inc., 312 F.3d 90, 93 (2d Cir. 2002) (conducting Noerr-Pennington sham-exception analysis to a state tortious interference with a business expectancy claim, but affirming the district court's decision on grounds other than Noerr-Pennington).

Despite Noerr-Pennington immunity protecting plaintiffs from state-law counterclaims such as the fraud, tortious interference and New York Business Law § 349 counterclaims leveled here, there is a "sham litigation" exception to the Noerr-Pennington doctrine.  The Supreme Court has outlined a two-part definition of "sham" litigation:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr. . . .  Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of [an

adversary], through the use of the <u>process</u>—as opposed to the
<u>outcome</u> of that process . . . .

<u>Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.</u>, 508 U.S. 49, 60-61 (1993)
(quotation marks & citations omitted) (emphasis in the original).  Both the objective and the
subjective prongs must be met in order for the counter-plaintiff to establish the sham-litigation
exception to <u>Noerr</u> immunity.  <u>Id.</u>  <u>Noerr-Pennington</u> immunity "extends only to activities
(including litigation) that are not a mere sham to cover . . . an attempt to interfere directly with
the business relationships of a competitor."  <u>Mosdos Chofetz Chaim v. Vill. of Wesley Hills</u>, 701
F. Supp. 2d 568, 602-04 (S.D.N.Y. 2010) (internal quotations & citations omitted).

 The counter-plaintiff has the burden of demonstrating that the "petition" falls within the
"sham" exception to the <u>Noerr-Pennington</u> doctrine.  Although Ruslan Erlikh bears the ultimate
evidentiary burden of demonstrating that GEICO's lawsuit against him is a sham, his only
burden on this motion to amend his answer to include counterclaims is to plead sufficient facts to
support that GEICO's lawsuit is objectively baseless and intended to harm him through the use
of governmental process.  See <u>Alt. Electrodes, LLC v. Empi, Inc.</u>, 597 F. Supp. 2d 322, 331
(E.D.N.Y. 2009) ("Plaintiff alleges that the litigation was both subjectively and objectively
baseless and plausibly supports this claim with [the pleading] . . . .  At this stage of litigation,
such allegations are sufficient to withstand a motion to dismiss."); <u>Agfa</u>, 2003 WL 21555087, at
*3 (stating the requirement that "allegations of 'sham' litigation be contained in the pleadings").

 Here, Ruslan Erlikh has adequately pleaded the objectively baseless element to the
<u>Noerr-Pennington</u> sham-litigation exception.[8]  It should be noted that "[a] winning lawsuit is by

---

[8] Some courts have debated whether a plaintiff alleging the sham-litigation exception to <u>Noerr-
Pennington</u> doctrine must satisfy a heightened-pleading standard in light of the constitutional
interest at stake.  <u>Compare</u> <u>Franchise Realty Interstate Corp. v. San Fransisco Local Joint
Executive Bd. of Culinary Workers</u>, 542 F.2d 1076, 1083 (9th Cir. 1976) (stating that the activity

definition a reasonable effort at petitioning for redress and therefore not a sham." Prof'l Real

Estate Investors, 508 U.S. at 61 n.5. In light of this rule, GEICO's settlement with Eastchester

for $550,000.00 would normally suggest that the underlying litigation, as a matter of law, was

not objectively baseless. See Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991,

1008 (9th Cir. 2008) ("We begin by analyzing whether the underlying litigation was objectively

baseless . . . . The fact that this ongoing litigation settled suggests that the original suit as not

objectively baseless."); New West, L.P. v. City of Joliet, 491 F.3d 717, 722 (7th Cir. 2007)

(stating that a lawsuit that was settled for a significant amount could not form the basis for the

sham litigation exception); STMicroelectronics, Inc. v. Avago Tech. U.S., Inc., No. 10 Civ. 5023

(JF) (PSG), 2011 WL 1362163, at *2 (N.D. Cal. Apr. 11, 2011) ("In determining whether

particular litigation is a sham, courts often look to settlements and rulings on dispositive motions

as evidence of the merits of the case.") (citing Theme Promotions, Inc., 546 F.3d at 1008);

---

challenged was essentially political and involved sensitive First Amendment issues such that to
plead the sham-litigation exception, "a complaint must include allegations of the specific
activities, not protected by Noerr"); Twin City Bakery Workers & Welfare Fund v. Astra
Aktiebolag, 207 F. Supp. 2d 221, 223 (S.D.N.Y. 2002) ("Where possible, . . . [the sham litigation
analysis] should be addressed to the face of the complaint, in order to avoid chilling a litigant's
exercise of the right to petition."); Thomson Info. Servs., Inc. v. Lyons Commercial Data, Inc.,
1998 WL 193236, at *1 (S.D.N.Y. 1998) ("While [the plaintiff] alleges [objective baselessness]
in general terms, it offers, in response to plaintiff's instant motion, no particulars to support the
claim, notwithstanding that [a sham allegation] is tantamount to a claim of fraud . . . ."), with
SecurityPoint Media, LLC v. The Adason Grp., LLC, No. 07 Civ. 444 (SCB), 2007 WL
2298024, at *5 (M.D. Fla. Aug. 7, 2007) (declining to impose a heightened pleading standard
upon the plaintiff, stating that Rule 8(a)(2) requires "a short and plain statement of the claim
showing that the [plaintiff] is entitled to relief"); Sage Intern., Ltd. v. Cadillac Gage Co., 507 F.
Supp. 939 (E.D. Mich. 1981) ("Although . . . courts have indicated that the first amendment
concerns require careful pleading of facts sufficient to bring the claim within the sham exception,
. . . few courts have given extensive attention to the rationale. . . . Those courts which have
given explicit consideration to Rule 8(a) have concluded that the general standards of notice
pleading must govern rather than an ad hoc standard formulated to protect a constitutional
interest."). GEICO does not argue for, or provide briefing in support of, a heightened pleading
standard in this action. Docket No. 107 at 18-21. Therefore, this Court reviews Ruslan Erlikh's
counterclaims under a notice-pleading standard.

Movers & Warehousemen's Ass'n of Greater N.Y. v. Long Island Moving & Storage Ass'n, No.
98 Civ. 5373 (SJ), 1999 WL 1243054, at *6 (E.D.N.Y. Dec. 16, 1999) (stating that "resolution
[by settlement] does not lend itself well to the label objectively baseless").  However, Ruslan
Erlikh's allegations sidestep this problem by stating that the GEICO-Eastchester settlement was
not an arm's-length transaction, but rather reached through backroom dealings, i.e., GEICO
exacted the settlement with Eastchester from Dr. Ciancimino by threatening to sue Bromer
Medical, P.C., another medical office with which Dr. Ciancimino was affiliated, for RICO
violations if Dr. Ciancimino did not sacrifice Eastchester to protect Bromer Medical, P.C.[9]
Docket No. 106 ¶¶ 9-11; see TFTF Capital Corp. v. Marcus Dairy, Inc., 312 F.3d 90, 94 (2d Cir.
2002) (stating that "a default judgment does not ipso facto constitute a determination of the
'objective reasonableness' of the lawsuit, especially in a case where the plaintiff claims that the
judgment was obtained through deceit").

 GEICO nonetheless is entitled to Noerr-Pennington immunity because Ruslan Erlikh fails
to plead facts in support of the second element of the Noerr sham-litigation exception, i.e., that
GEICO's "subjective motivation must concea[l] an attempt to interfere directly with the business
relationships of [an adversary] . . . through the use [of] the governmental process—as opposed to

---

[9] GEICO also argues that Ruslan Erlikh has not demonstrated that the underlying litigation was
objectively baseless because Ruslan Erlikh did not move to dismiss the lawsuit under FRCP 12
when he had the chance, preferring instead to file an answer.  Docket No. 107 at 20.  According
to GEICO, "[t]his would clearly indicate that GEICO had (and has) a real interest in vindicating
its own rights because there would have been no reason [for Ruslan Erlikh to] continue to litigate
if GEICO's sole purpose in filing the complaint was to damage [Ruslan] Erlikh."  Id. (citing
Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen, 313 F. Supp. 2d 339, 343-44
(S.D.N.Y. 2004)).  A FRCP 12(b)(6) motion would not necessarily have resulted in the dismissal
at the pleadings stage because the motion would have been evaluated for the sufficiency and
plausibility of its allegations, not for whether there were additional facts such as those alleged by
Ruslan Erlikh that suggest the complaint's lack of merit.

the <u>outcome</u> of that process . . . ."[10]  <u>BE & K Const. Co. v. NLRB</u>, 536 U.S. 516, 526 (2002)

(citing <u>Prof'l Real Estate Investors</u>, 508 U.S. at 60-61).  The Supreme Court has suggested in

<u>dicta</u> some considerations relevant to whether GEICO could here be said to have exploited the

use of governmental process with an improper subjective motivation, which are

> whether [the litigant] was indifferent to the outcome on the merits
> of the . . . suit, whether any damages . . . would be too low to
> justify [the litigant's] investment in the suit, or whether [the
> litigant] had decided to sue primarily for the benefit of collateral
> injuries inflicted through the use of legal process . . . .

<u>Prof'l Real Estate Investors</u>, 508 U.S. at 65-66; <u>see</u> <u>BE & K Const. Co.</u>, 536 U.S. at 536-37 (not

needing to decide whether lawsuits "would not have been filed but for a motive to impose the

costs of the litigation process, regardless of the outcome").  Ruslan Erlikh has alleged none of

these or similar kinds of facts.  To the contrary, Ruslan Erlikh alleges that GEICO's $550,000.00

settlement with Eastchester—the outcome of the lawsuit, even if obtained through strong-arm

tactics—rendered Eastchester insolvent and therefore interfered with Eastchester and Precision's

contracts because Eastchester was unable to pay Precision and Precision, in turn, was unable to

pay Ruslan Erlikh.  <u>Docket No. 106</u> ¶ 19 ("GEICO's conduct on entering into a bad faith and

strong-armed settlement with Ciancimino and [Eastchester] constitute[s] an intentional

interference with my relationship with Precision . . . ."); <u>id.</u> ¶ 12 ("I spend an enormous amount

of time and effort creating and building the business and relationship for Precision . . . and

Eastchester . . . .  I am owed an enormous amount of money pursuant to the terms of the

contracts between the parties, including money that was surreptitiously waived by Ciancimino or

taken illegally by GEICO."); <u>id.</u> ¶ 16 ("GEICO's strong-armed settlements with the professional

---

[10] It is necessary to examine the two elements of the sham-litigation exception to <u>Noerr</u> in this chronological order because GEICO's "subjective intent is irrelevant unless it is first found that the challenged litigation is objectively meritless."  <u>Mosdos Chofetz Chaim</u>, 701 F. Supp. 2d at 602 (citing <u>Prof'l Real Estate Investors</u>, 508 U.S. at 60-61).

corporations [like Eastchester] are fraudulent in many respects . . . [and] the people and companies who provided services to the PC's and are entitled to be paid what is owed to them, in this case me."); id. ¶ 14 (GEICO "has engaged in a systematic pattern of fraud by utilizing their financial leverage to intimidate and bully small medical practices into waiving their medical receivables and assigning to GEICO money which GEICO is not, and knows it is not, entitled to.").  All of these allegations together argue that GEICO had an outcome-driven motive, i.e., it actually wanted to obtain judgment against the defendant medical practices it sued, and GEICO did in fact obtain these judgments or settlements in this and other cases.

The pleading thus falls short of what is required to plead subjective motivation to interfere through government process, and therefore, to plead Noerr's sham-litigation exception. For example, in Krasnyi Oktyabr, Inc. v. Trilini Imports, 578 F. Supp. 2d 455, 475 (E.D.N.Y. 2008), the court granted the counterclaim defendant's summary judgment motion against the counterclaim plaintiffs' tortious interference with prospective business relations claim under Noerr.  The court stated that the counterclaim plaintiffs had not demonstrated that the sham-litigation exception was applicable, because the counterclaim plaintiffs

> ha[d] not shown that [the counterclaim defendant] is attempting to interfere directly with its business relations by the use, not outcome, of governmental process.  Here, [the counterclaim plaintiffs'] claim rests wholly on the outcome of process, namely interference with prospective resulting from the court's issuance of a temporary injunction.  Absent the injunction, however, no evidence has been presented that [the counterclaim defendant's] choice to involve [the counterclaim plaintiffs] in a suit has interfered with its prospective business relations.

Id. at 475.  Similarly, here, as in Krasnyi Oktybar, Ruslan Erlikh does not allege that GEICO was indifferent to the outcome of its lawsuit; that GEICO's lawsuit cannot be explained by economic considerations because its cost far exceeded its expected return; or that GEICO sued

primarily for the benefit of the collateral injury that the cost of litigation would inflict upon

Ruslan Erlikh or that any benefit was inflicted. See Bayou Fleet, Inc. v. Alexander, 26 F. Supp.

2d 894, 896-97 (E.D. La. 1998) (finding that "the pleadings are undisputed that [the defendant]

genuinely sought to achieve the government measures for which he lobbied. He was not

interested in the process itself as a weapon, but in actually obtaining the agency decisions that

would effectively close [the plaintiff's operations].").

     Finally, it should be noted that Ruslan Erlikh argues that Noerr-Pennington doctrine does

not apply here because he has not asserted the proposed counterclaims based on GEICO's

lawsuit. In making this argument, Ruslan Erlikh contradicts himself, stating that "[t]he fact that

GEICO has abused the litigation process and engaged in settlements . . . is [the] framework for

their pattern of fraud." Docket No. 108 at 7. Later in his argument against Noerr-Pennington

immunity, Ruslan Erlikh adds that "GEICO has systematically commenced dozens of federal

civil RICO cases against hundreds of individuals, medical professionals and professional

corporations to . . . force professional corporations to waive their outstanding receivables and

confess to judgments in GEICO's favor." Id. This Court finds that Ruslan Erlikh has plainly

described his proposed counterclaims such that a Noerr-Pennington immunity analysis is

required.

     In light of the foregoing, this Court respectfully recommends that the District Judge **find**

that Ruslan Erlikh has not sufficiently pleaded the second element of the sham-litigation

exception to Noerr-Pennington doctrine, and **deny** Ruslan Erlikh's motion to amend his answer

to file counterclaims against GEICO because GEICO is immune to those claims under Noerr-

Pennington.

### iv. New York's Judicial-Proceedings Privilege Does Not Bar Ruslan Erlikh's Counterclaims Against GEICO

GEICO argues that the New York judicial-proceedings privilege bars Ruslan Erlikh's proposed counterclaims to the extent that they rest upon GEICO's complaint allegations.[11] Docket No. 107. New York courts recognize a judicial-proceedings privilege, which provides that "statements made in judicial and quasi-judicial proceedings are privileged and may not be actionable so long as they are pertinent to the controversy." Zdenek Marek v. Old Navy (Apparel) Inc., 348 F. Supp. 2d 275, 281 (S.D.N.Y. 2004).

The judicial-proceedings privilege is frequently applied to protect a litigant from libel or defamation actions arising from statements made in the context of a lawsuit. See Hadar v. Pierce, 111 A.D.3d 439, 439 (1st Dep't 2013) (alluding to the frequent invocation of the judicial-proceedings privileges against defamation claims). That was the case in Zdenek Marek, in which the court dismissed a plaintiff's libel and injurious falsehood claims arising from the defendants' statements in a quasi-judicial proceeding. Zdenek Marek, 348 F. Supp. 2d at 283; see Boice v. Unisys. Corp., 50 F.3d 1145, 1149 (2d Cir. 1995) (noting that "[p]ublic policy requires that certain communications, though defamatory, are privileged, and may not serve as the basis for a defamation action," and reversing the district court's denial of a motion to dismiss a defamation

---

[11] Rule 501 of the Federal Rules of Evidence provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Therefore, here, as Ruslan Erlikh's counterclaims arise solely under state law, New York privilege law applies. See In re Waterscape Resort LLC, No. 11 Civ. 11593 (SMB), 2014 WL 302856, at *2 (Bkrtcy. S.D.N.Y. Jan. 28, 2014) ("As the subpoena concerns a state law claim . . . , New York's privilege law applies."); cf. Steinberg v. Mount Sinai Med. Ctr., Inc., No. 12 Civ. 51 (SLT) (VMS), 2014 WL 1311572, at *2 (E.D.N.Y. Mar. 31, 2014) ("Where, as here, a party seeks discovery relevant to both federal and state civil claims, federal law governs the discovery of information protected by a state confidentiality statute."). Ruslan Erlikh does not contest that New York privilege law applies here. Docket No. 108. He only argues that the New York judicial-proceedings privilege does not fit the facts of this case. Id. at 8.

claim as required by the judicial-proceedings privilege required it); <u>Sexter & Warmflash, P.C. v.</u> <u>Margrabe</u>, 38 A.D.3d 163, 171 (1st Dep't 2007) (reversing the lower court's denial of a motion to dismiss a defamation claim on the basis of judicial-proceedings privilege, holding that "a statement made in the course of legal proceedings is absolutely privileged if it is at all pertinent to the litigation").

The judicial-proceedings privilege has also been applied in cases involving New York state-law claims other than libel.  For example, in <u>Jones v. SmithKlineBeecham</u>, No. 07 Civ. 0033 (NPM), 2007 WL 2362354, at *3-*4 (N.D.N.Y. Aug. 14, 2007), the plaintiff, who originally sued the defendants for employment discrimination, later brought an additional claim for negligent infliction of emotional distress ("NIED") relating to the defendants' statements about the plaintiff's work habits in the course of the employment-discrimination proceedings. The court dismissed the plaintiff's NIED claim, invoking the New York judicial-proceedings privilege:  "If the statements are relevant to the litigation, even if accompanied by actual malice, they are absolutely privileged and may not be the basis for any civil action."  <u>Id.</u> at *4; <u>see</u> <u>Alaimo v. Gen. Motors Corp.</u>, No. 07 Civ. 7624 (KMK) (MDF), 2008 WL 4695026, at *2 (S.D.N.Y. Oct. 20, 2008) (finding that the plaintiffs' claim relating to the defendants' alleged perjury in an earlier lawsuit did not appear to exist under New York law, and also ruling that even if there was some such claim, the facts alleged by the plaintiffs were not actionable under the judicial-proceedings privilege); <u>Brady v. Calyon Sec. (USA)</u>, No. 05 Civ. 3470 (GEL), 2007 WL 4440926, at *19 (S.D.N.Y. Dec. 17, 2007) (granting the defendants' summary judgment motion on the plaintiff's tortious interference with prospective business economic relations claim, stating that the defendants' allegedly incorrect statements on a National Association of Securities Dealers regulatory form relating to employee termination, were protected by absolute

privilege); <u>Martinson v. Blau</u>, 292 A.D.2d 234, 235 (1st Dep't 2002) (affirming the lower court's dismissal of the plaintiffs' claims for professional malpractice, breach of contract and more based on the defendant's purported perjury at trial, since a trial witness "enjoys an absolute privilege with respect to his or her testimony").

GEICO argues that the New York judicial-proceedings privilege requires the dismissal of Ruslan Erlikh's fraud, tortious interference and Section 349 claims on the pleadings. <u>Docket No. 107</u> at 22-23. However, GEICO's discussion of this area of the law is extremely brief and does not explain why GEICO believes that the judicial-proceedings privilege applies. <u>Docket Nos. 107, 109</u>. Ruslan Erlikh protests that the counterclaims do not rest on any statements made by GEICO, "but rather on their systematic misuse of [its] economic advantage," and concludes that the judicial-proceedings privilege is inapplicable. <u>Docket No. 108</u> at 8. GEICO counters that Ruslan Erlikh does complain about at least one GEICO statement, pointing to GEICO's settlement statements to Eastchester. <u>Docket No. 109</u> at 11 (citing <u>Officemax, Inc. v. Cinotti</u>, 966 F. Supp. 2d 74, 79 (E.D.N.Y. 2013) (citing <u>Aequitron Med., Inc. v. Dyro</u>, 999 F. Supp. 294, 298 (E.D.N.Y. 1998)) (The litigation privilege is absolute and "has been applied not only to statements made in pleadings and in court, but also to statements made . . . during offers of settlement by attorneys.").

This Court finds GEICO to be correct in saying that Ruslan Erlikh's proposed counterclaims rest in part upon GEICO's statements during strong-arm settlement negotiations. For example, Ruslan Erlikh's proposed counterclaims state that GEICO promised Dr. Ciancimino that GEICO would not sue Bromer in exchange for Dr. Ciancimino's agreement that he would bind Eastchester to pay a $550,000.00 settlement to GEICO. <u>Docket No. 106</u> ¶ 10.

Just because the statement of a settlement ultimatum is privileged does not mean that Ruslan Erlikh's proposed counterclaims must all be dismissed.  After all, Ruslan Erlikh's proposed counterclaims do not rest exclusively on that particular statement, made in the course of this particular judicial proceeding.  Ruslan Erlikh also alleges that GEICO has created, through its systematic prosecution of medical professional corporations under RICO, an environment of fear that scares medical offices into waiving their accounts receivables anytime GEICO challenges the claims' legitimacy.  Docket No. 106 ¶ 24.  Ruslan Erlikh also alleges that after achieving settlement in myriad similar cases, GEICO has at times sold the resulting judgment back to management defendants for cash so that the management defendants can deal with the trouble of collecting on the medical professional corporation's accounts receivables, despite GEICO's position that the management defendants were not lawfully permitted to collect on the medical office's accounts receivables from insurance companies.  Id. ¶ 9 GEICO does not present the Court with any argument as to whether these or other allegations offered in support of the proposed counterclaims are privileged statements as well.  Indeed, at first blush, these allegations appear to have much more to do with acts and practices than with statements.

In light of the foregoing, this Court respectfully recommends that the District Judge **find** that Ruslan Erlikh's proposed counterclaims need not be dismissed under the judicial-proceedings privilege simply because GEICO has successfully identified one singular privileged statement among the numerous allegations Ruslan Erlikh has made.

### v.  Conclusion

For the foregoing reasons, this Court respectfully recommends that the District Judge **deny** Ruslan Erlikh's motion to amend his answer to include counterclaims.

* * * * *

Although this Court has found that Ruslan Erlikh's allegations do not support the counterclaims he seeks to bring, his factual allegations, if true, are troubling.  Ruslan Erlikh alleges that GEICO has a practice of pressuring medical professional corporations into entering large, possibly baseless settlements under duress, and then satisfying the resulting judgment by taking possession of the medical professional corporations' accounts receivables and collecting on them from other insurance carriers.  If, as GEICO claims, the fraudulently incorporated medical professional corporations cannot lawfully collect on the claims from an insurance carrier, then it is not at all clear that the claims become any less tainted simply by virtue of GEICO taking control over them.  In the end, Ruslan Erlikh's allegations may leave cause for concern for the government, and possibly other counterclaim plaintiffs who do have the standing vis-à-vis GEICO that Ruslan Erlikh lacks.  Were GEICO to seek to continue their claims in this action, the Court would examine their merits and consider Defendants' defenses in light of Ruslan Erlikh's allegations if an appropriate factual record were developed.  As discussed below, however, I recommend that the entire action be dismissed without prejudice.

### b.  GEICO's FRCP 41(a)(2) Motion To Dismiss Its Claims Against The Erlikhs Should Be Granted

As noted above, GEICO asked that the Court hold its FRCP 41(a)(2) motion to dismiss in abeyance while considering Ruslan Erlikh's motion to amend his answer, but to consider the FRCP 41(a)(2) motion on its merits in the event that the Court denied Ruslan Erlikh's motion to amend.  Docket No. 102 at 46:19-47:5.  Now that this Court has recommended that the District Judge **deny** Ruslan Erlikh's motion to amend, I sua sponte recommend that the District Judge **grant** GEICO's FRCP 41(a)(2) motion.

i.  **The Erlikhs Would Suffer No Apparent Legal Prejudice Other Than The Mere Prospect Of A Second Lawsuit, Which Supports Granting GEICO's FRCP 41(a)(2) Motion To Dismiss**

In its FRCP 41(a)(2) motion, GEICO asks the Court to dismiss all of its claims against the Erlikhs without prejudice.  Docket No. 91.  As for whether the Erlikhs would "suffer some legal prejudice other than the mere prospect of a second lawsuit," I find that they would not. Camilli, 436 F.3d at 123.  Some examples of legal prejudice that might support denying the motion are: "the loss of a federal forum, the loss of jury trial rights, the loss of statute-of-limitations defense, or the inability to conduct sufficient discovery to mount an adequate defense."  Westlands Water Dist. v. U.S., 100 F.3d 94, 97 (9th Cir. 1996).  Indeed, Ruslan Erlikh invokes one of these concerns in his opposition to the FRCP 41(a)(2) motion, namely, that he is worried that his counterclaims "may run into a statute of limitations problem" if the FRCP 41(a)(2) motion to dismiss is granted.  Docket No. 101.  He fails to identify the statute of limitations that give rise to his concern.  However, insofar as I found above that he has not pleaded sufficient facts to support his proposed counterclaims, this argument falls flat.  Docket No. 101.

I therefore find that this first inquiry into the appropriateness of the FRCP 41(a)(2) motion supports granting GEICO's motion; the Erlikhs would not suffer any observed legal prejudice from the dismissal other than the prospect of a second lawsuit.[12]

---

[12] It should be noted that the prospect of a second lawsuit is not a likely concern.  During the Court's June 14, 2013 motion hearing on the FRCP 41(a)(2) motion, GEICO's counsel stated that "I can represent that GEICO doesn't have any intention of refiling an action against the Erlikhs."  Docket No. 102 at 36:25-37:2.

ii. **The** <u>**Zagano**</u> **Factors Weigh In Favor Of Granting GEICO's FRCP 41(a)(2) Motion To Dismiss**

Next, I review the <u>Zagano</u> factors.  GEICO argues that it was diligent in bringing the

motion.  Docket No. 93-1.  In so arguing, GEICO cites the fact that it filed the motion

approximately one month after the settlement conference in which the Erlikhs revealed that they

had no money with which to pay GEICO, and before the Parties have conducted substantial

discovery.  Id.  I find that GEICO was diligent in bringing the motion because they did indeed

file it shortly after the event that GEICO claims "led to [its] decision not to pursue the action at

this time," satisfying the first of the <u>Zagano</u> factors.  <u>Hinfin Realty Corp. v. Pittston Company</u>,

206 F.R.D. 350, 355-56 (E.D.N.Y. 2008).  I find that GEICO's explanation for filing the FRCP

41(a)(2) motion also satisfies the fifth <u>Zagano</u> prong.  It is logical for GEICO to seek to dismiss

its claim if it believes that its prosecution would only lead to further litigation costs but no

meaningful recovery.  <u>See</u> <u>In re Solv-Ex Corp. Secs. Litigation</u>, 62 F. App'x 396, 398 (2d Cir.

2003) ("[P]laintiffs' explanation for dismissing the action—[the defendant's] inability to satisfy

any judgment entered—is entirely reasonable."); <u>cf.</u> <u>Am. Fed. of State, Cty. & Mun. Emp. Dist.</u>

<u>Council 37 Health & Sec. Plan v. Pfizer, Inc.</u>, No. 12 Civ. 2237 (JPO), 2013 WL 2391713, at *3

(S.D.N.Y. June 3, 2013) (finding the plaintiffs' explanation to be inadequate because "the only

substantial reason for dismissal that [the plaintiffs] have provided is their desire to litigate this

case in the Seventh Circuit, which they believe has more favorable RICO precedent").

Ruslan Erlikh protests that GEICO misleads the Court when it represents that it filed the

FRCP 41(a)(2) motion after learning that the Erlikhs have no money with which to satisfy any

judgment.  Docket No. 101.  Instead, Ruslan Erlikh claims that GEICO filed the Rule 41(a)(2)

because it is frightened at the prospect of producing discovery relating to Ruslan Erlikh's

counterclaims such that its wrongdoing is exposed to the light of day.  Id. (It is "very

43

coincidental timing that 12 days after I brought a motion to compel, [GEICO] inform[s] the Court of their intention to file this motion.").  Ruslan Erlikh offers no evidence to support his theory.  It is contradicted by the fact that GEICO did not withdraw its complaint when faced with the first of Defendants' motions to compel.  Docket No. 77.  He does not correct GEICO's contention that he would be unable to satisfy the judgment, except to say that GEICO should have realized that problem earlier.  See Banco Cent. de Paraguay v. Paraguay Humanitarian Found., Inc., No. 01 Civ. 9649 (JFK), 2006 WL 3456521, at *4 (S.D.N.Y. Nov. 30, 2006) (rejecting the defendants' Zagano arguments against dismissal, stating that the defendants "merely make conclusory 'pound the table' statements with no evidentiary support'") (citation omitted).  In addition, and as discussed above, I have not found that Ruslan Erlikh has pleaded any facts supporting the proposed counterclaims; as a result, I find without merit Ruslan Erlikh's theory that GEICO's FRCP 41(a)(2) motion was meant to avoid counterclaim-related discovery.

The second Zagano factor also favors dismissal because I find that GEICO's claims against the Erlikhs were not unduly vexatious.  Again, GEICO has represented that after the settlement conference, its counsel "undertook a sober appraisal of the claims raised here[,]" and in light of the Erlikhs averred inability to pay, "determined that this action could be dismissed." Accurate Grading Quality Assur., Inc. v. KGK Jewelry, LLC, No. 12 Civ. 1343 (KPF) (DF), 2014 WL 3302303, at *3 (S.D.N.Y. July 7, 2014).  In addition, GEICO's representation to the Court that it "doesn't have any intention of refiling an action against the Erlikhs" supports a finding that GEICO's conduct has not been unduly vexatious.  See Pfizer, Inc., 2013 WL 2391713, at *3 (stating that the plaintiffs' "behavior does not qualify as unduly vexatious" when the evidence did not show that the plaintiffs "intend to re-file this action elsewhere or that they have threatened to do so"); Docket No. 102 at 36:25-37:2.  GEICO brought this action and

achieved a substantial success with its settlement with Defendant Eastchester.  Docket No. 52.

This supports the conclusion that it was brought to achieve a valid goal, as analyzed above in the

Noerr-Pennington discussion.  See supra, Section III.a.iii.  Once there was a meaningful

recovery, and continued investment was not likely to yield significant additional recovery,

GEICO's decision to dismiss was a reasonable resolution to this case.

      Ruslan Erlikh argues that GEICO's litigation was unduly vexatious as against the Erlikhs,

and attempts to show this by repeating many of the same allegations he made in conjunction with

his proposed counterclaims, i.e., that GEICO has a pattern "of making shocking allegations of

fraud and racketeering and then settling with the medical professional corporation and collecting

monies from other insurance companies."  Docket No. 101.  However, as discussed above,

insofar as these allegations are specific to Eastchester (even though the consequence may be that

Eastchester's creditors, the Erlikhs included, may not be able to collect from Eastchester), this

does not show that GEICO's claims against the Erlikhs themselves were unduly vexatious.

      As for the third Zagano factor, which considers "the extent to which the suit has

progressed, including the defendant's efforts and expense in preparation for trial," I find that it

also weighs in GEICO's favor, albeit less heavily that the previously discussed factors.  Zagano,

900 F.2d at 14.  GEICO brought this action in January 2011, Docket No. 1, and in the ensuing

two years, the Erlikhs have produced evidence, been deposed, attended numerous conferences

and hearings, and opposed some motions.  Docket No. 11 (the Erlikhs' premotion conference

letter); Docket Entry 7/26/2011 (status conference attended by the Erlikhs); Docket No. 56 (pro

se motion to stay to find a new counsel); Docket Entry 8/1/2012 (discovery conference attending

by the Erlikhs); Docket Nos. 75, 76 (pro se response in opposition to GEICO's motion to strike

the Erlikhs' answer); Docket No. 77 (pro se discovery motion); Docket Entry 10/1/2012 (status

conference attended by the Erlikhs); Docket Entry 2/4/2013 (settlement conference attended by the Erlikhs).  GEICO thus has had the opportunity to develop its claims against the Erlikhs during the pretrial stage of this action, and that the Erlikhs have expended time and money. However, the Parties dispute to what extent the Erlikhs have expended these resources.  The Erlikhs believe they have incurred substantial costs, Docket No. 101, while GEICO characterizes them as minimal and primarily dealing with an involuntary bankruptcy proceeding brought by the Erlikhs as well as GEICO's attempts to collect on the Eastchester judgment (as opposed to dealing with the substantive merits of GEICO's claims against the Erlikhs), Docket No. 94. Here, the Parties have not progressed to summary judgment or the eve of trial.  See Pfizer, Inc., 2013 WL 2391713, at *4 (stating that this Zagano factor tended to support dismissal, as there has been "no discovery, summary judgment briefing, or trial preparation").

Regardless of which Party's characterization of the amount and nature of discovery is true, in light of the fact that Ruslan Erlikh has been unsuccessful in convincing this Court that he has alleged facts that support his proposed counterclaims, as discussed above, I find that the Erlikhs' effort and expense in defending against GEICO's claims does not justify obligating GEICO to continue with its claims now.

The fourth Zagano factor—"duplication of relitigation," also weighs in favor of granting GEICO's FRCP 41(a)(2) motion. Zagano, 900 F.2d at 14. First, and I realize that this is no guarantee, GEICO has "represent[ed] that [it] doesn't have any intention of refiling an action against the Erlikhs" because GEICO believes that such an effort would be wasteful in light of the Erlikhs' inability to pay a judgment. Docket No. 102 at 37:1-2, 48:9. Ruslan Erlikh argues that in the event that GEICO changes its mind and does re-file, the discovery conducted to date in this case may not necessarily be helpful in a subsequent action, requiring him to spend even more

legal fees. <u>Docket No. 101</u>. I find it unlikely that Ruslan Erlikh's unsubstantiated fears will be realized. Even if GEICO filed another litigation against Ruslan Erlikh, GEICO's position relative to Eastchester, Precision and the Erlikhs is likely to remain the same such that any discovery done to date will translate over into any new case.  <u>Docket No. 52</u>.

### iii.   Conclusion

In light of the fact that the first inquiry relating to a FRCP 41(a)(2) motion weighs in favor of granting GEICO's motion, and the fact that all five of the <u>Zagano</u> factors in the second inquiry weigh in favor of granting GEICO's motion, I respectfully recommend that the District Judge **grant** GEICO's FRCP 41(a)(2) motion and enter judgment dismissing GEICO's claims against the Erlikhs without prejudice.

### c.   Ruslan Erlikh Should Not Obtain Additional Discovery Or An Attorneys' Fees Awarded In The Event That GEICO's Claims Against The Erlikhs Are Dismissed

Ruslan Erlikh asks that "if the Court [allows] GEICO to drop this case at this time that they be Ordered to turn over the documents I have requested and to pay my reasonable attorney's fees to date." <u>Docket No. 101</u> (citing <u>In re Vitamins Antitrust Litig.</u>, 198 F.R.D. 296, 304 (D.D.C. 2000).  As to the question of additional discovery in the event of dismissal, I find that it is unwarranted.  In <u>In re Vitamins Antitrust Litigation</u>, which was a class action, the court held that if it were to dismiss certain plaintiffs' claims against the defendants without contemporaneously permitting the defendants' discovery against those plaintiffs, it would "render the defendants unable to conduct sufficient discovery to adequately defend themselves against the [remaining] charges in this case."  198 F.R.D. at 305.  That is not the case here. Here, were the Court to grant GEICO's FRCP 41(a)(2) motion to dismiss, there would be no remaining plaintiffs against whom the Erlikhs must defend.

That leaves the question of attorneys' fees.  The In re Vitamins Antitrust Litigation Court held that "to the extent that defendants can show unnecessary expenses, the proper remedy for such wasted expenditures would be reimbursement of costs rather than a denial of voluntary dismissal [under FRCP 41(a)(2)]."  In re Vitamins Litig., 198 F.R.D. at 304.  This is akin to awarding attorneys' fees due to a plaintiff's bad faith.  However, in Vitamins Litigation, the court found that the plaintiffs were not diligent in bringing their FRCP 41(a)(2) motion.  By contrast, GEICO was diligent in bringing its FRCP 41(a)(2) motion here.  As noted above, it was brought soon after the Erlikhs informed GEICO at a settlement conference that they could not pay any judgment, and before substantial discovery was conducted by the Erlikhs.  It therefore cannot be said that the Erlikhs' attorneys' fees (the Erlikhs have not been represented by counsel since early 2012) and costs were "unnecessary expenses" in the same vein as those in In re Vitamins Antitrust Litigation.

In light of the foregoing, I respectfully recommend that, in the event that GEICO's FRCP 41(a)(2) motion is granted and GEICO's claims against the Erlikhs dismissed, the District Judge **deny** Ruslan Erlikh's request that he be awarded additional discovery and attorneys' fees at that moment.

## IV.    Conclusion

For the foregoing reasons, I respectfully recommend that the District Judge **deny** Ruslan Erlikh's motion to amend his answer to include counterclaims because it was filed with undue and inexcusable delay; because none of the fraud, tortious interference with a contract and Section 349 counterclaims is sufficiently supported by factual allegations; and because GEICO is immune under the Noerr-Pennington doctrine, Ruslan Erlikh having not pleaded facts to support a sham-litigation exception to GEICO's Noerr-Pennington immunity.

In the event that Ruslan Erlikh's motion for leave to amend his counterclaims is denied, I respectfully recommend that the District Judge, under the legal-prejudice and Zagano tests, **grant** GEICO's FRCP 41(a)(2) motion and dismiss GEICO's claims against the Erlikhs.  If the counterclaims are permitted, I recommend that GEICO's FRCP 41(a)(2) motion be deemed withdrawn.

In the event that GEICO's FRCP 41(a)(2) motion is granted, I respectfully recommend that the District Judge **deny** Ruslan Erlikh's request for additional discovery and attorneys' fees at the moment of dismissal.

## V.    Objections

Pursuant to 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b), the Parties shall have seventeen (17) days from the filing of this report and recommendation on ECF to file written objections with the Clerk of Court and in accordance with the District Judge's Individual Rules. Any request for an extension of time to file objections must be made within the fourteen-day period and in accordance with the District Judge's Individual Rules.  Failure to file a timely objection to this report and recommendation generally waives any further judicial review of any Order or judgment entered in reliance on this report and recommendation.  See, e.g., Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Dated:  Brooklyn, New York
        August 11, 2014

_Vera M. Scanlon_

VERA M. SCANLON
United States Magistrate Judge

49